IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT MORI, II AND ROBERT MORI,

    Plaintiffs,

  vs.                                  CIV-S-07-0295-JAM GGH

ALLEN BARONI, et al.,

    Defendants.         /      ORDER

Previously pending on this court's law and motion calendar for June 19, 2008,[1] was plaintiffs' motion requiring compliance with a subpoena issued to Dennis Donald Geiger, filed June 9, 2008, and order to show cause regarding contempt pursuant to Fed. R. Civ. P. 45(e). Also before the court are plaintiffs' application for order shortening time and motion to compel compliance with subpoenas on non-parties Coon, Keen and Matsunaga, and applications for order shortening time with motions to quash[2] or in the alternative for protective order by these non-parties. Cynthia Larsen and Katie DeWitt appeared for plaintiffs. Timothy Kooy appeared for non-parties Geiger and Koon. Domenic Spinelli appeared for non-parties Keen and Matsunaga. After reviewing the papers and hearing oral argument, the court now issues the

---

[1] The hearing was set by order shortening time, filed June 10, 2008.

[2] Geiger and Coon also move to modify the subpoena.

1

following order.

BACKGROUND

Plaintiffs are landowners who purchased property in 2004 along the Mokelumne River. Next to the river levee was a riparian forest which is on the property. The Reclamation District No. 348 ("District") maintains the levee. Although the District is not a party, its trustees, Dambacher, Baroni and Giovannoni, are defendants. According to plaintiffs, defendants wanted to obtain an easement over the levee area on the Mori property, and while the parties were negotiating, Geiger allegedly promised Mori that he would take no action to remove the trees while Mori was on vacation. During that vacation, in February, 2005, plaintiffs allege that the District wrongfully removed the trees, without plaintiffs' knowledge or consent. Plaintiffs bring suit for due process violations under 42 U.S.C. § 1983, trespass, and conversion of farm equipment. Plaintiffs seek monetary damages. Defendants contend that the District lawfully removed the trees and equipment from the property pursuant to an easement to perform maintenance and tasks necessary for flood control, which easement they already owned over the levees before plaintiffs bought the property.

The history of this matter includes four other actions in state court filed by plaintiffs against the District or its trustees since 2005, some of which are based on the same facts as this case. Defendants' claim they have already produced over 100,000 documents responsive to plaintiffs' public records request.

The disputes at issue here concern plaintiffs' service of four subpoenas for testimony and documents, pursuant to Rule 45, in May and June, 2008. The only application for order shortening time approved thus far is plaintiffs' request requiring deponent Geiger to comply with their subpoena and show cause regarding contempt. Order, filed June 10, 2008. (Docket # 26.) Geiger was served with a notice of deposition and subpoena on defendants'

\\\\\

\\\\\

2

counsel on May 16, 2008.[3] He was also personally served on June 2, 2008, with a noticed deposition date of June 9, 2008. Geiger served plaintiffs with a written objection on June 4, 2008. Geiger appeared at his deposition on June 9th and his objections were placed on the record. Plaintiffs filed the instant motion in regard to Geiger on June 9, and Geiger filed his request for order shortening time in regard to his motion to quash on June 13. Geiger and his firm are litigation counsel for the District, and his firm served as counsel in two of the state court actions. He was also the designated negotiator for defendants in the process to reach an agreement with plaintiffs regarding the levee project, and served as Secretary of the District for Phase I of the levee improvement project. Geiger was identified in defendants' initial disclosures.

The four applications for order shortening time which have not yet been ruled upon raise similar issues as Keen, Geiger, and Coon are general legal counsel for the District. Keen also serves as Secretary to the Board of Trustees for the District.[4] Keen Decl., ¶ 4. Keen was served with a notice of deposition and subpoena on defendants' counsel on May 16, 2008, and was personally served with the notice and subpoena on June 5, 2008. She served an objection that day. Keen's deposition was originally scheduled for June 12 but an agreement was reached to continue it to June 24, 2008. Keen was identified in defendants' initial disclosures.

Coon also served as litigation counsel for the District in two of the state court actions brought by Mori. Coon was served with the notice and subpoena on May 16, 2008 through service on defendants' counsel. He was also personally served on May 22, 2008. His deposition was noticed for June 16, 2008. He served his objection on June 4, 2008. Defendants have identified Coon in their initial disclosures as a witness with discoverable information on certain matters.

---

[3] Plaintiffs contend that service was effectuated in this manner because defendants' counsel represented that Geiger could be contacted through him for purposes of arranging discovery.

[4] Movant Laureen Keen should not be confused with Charles Keen, not a movant, who is also with Geiger, Coon & Keen, and represented the District in some of the state court cases.

Matsanuga works for Hansen Engineering on matters for the District, and is Assistant Secretary to the District's Board of Trustees, attending Board meetings when Keen is unavailable. Matsunaga was served with a notice and subpoena through defendants' counsel on May 16, 2008, and personally served on May 22, 2008. Matsunaga served his objection on June 4, 2008. Matsunaga's deposition was originally scheduled for June 4 but continued to June 11. He appeared on that date but refused to provide testimony.

DISCUSSION[5]

    I. Procedural Requirements of Rule 45

Rule 45 requires in part that where a person is subject to a subpoena which requires production of documents, the following rules apply:

> (B) *Objections*. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to [production]. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
> (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
> (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Fed. R. Civ. P. 45(c)(2)(B).

"If the subpoena commands both testimony and production, however, the objection requirement applies to that portion of the subpoena seeking production." 9 Moore's Federal Practice, Civil § 45.41 [1][c] (2007).

All four deponents properly filed objections in a timely manner prior to their noticed date for appearance and production.

---

[5] Because the June 30th discovery cutoff in this case is imminent, the court's order is necessarily abbreviated. The issues here are complex, and the undersigned has done his best considering the lack of time in which to decide the issues.

1   The rule is unclear as to the requirements for subpoenas which require both
2   documents and testimony, and many cases permit the objection to stand as a motion to quash in
3   any event.  See e.g., Wiwa v. Royal Dutch Pet. Co., 392 F.3d 812 (5th Cir. 2004).  The court
4   does not agree that the deponent should be required to both file timely objections *and* file a
5   motion to quash or for protective order.  To inject this two level requirement, especially where
6   there are extreme time constraints, as in this case, would create only make-work for deponents
7   who find themselves having to hire counsel, review a case which they may or may not be familiar
8   with, and decide on a strategy, sometimes within only days as is the case with these deponents.

9   Plaintiffs' objections that deponents have not met the procedural requirements
10  because they did not also file a motion to quash or modify are not well taken, especially since
11  plaintiffs created these time constraints.  The court finds that deponents' timely objections
12  applied to both documents and testimony, and therefore it was incumbent on plaintiffs to move to
13  compel if they so desired.

14  Therefore, the motions to quash or for protective order filed by movants Geiger,
15  Keen, Coon and Matsunaga are denied as unnecessary, as are their requests for order shortening
16  time.[6]  In the alternative, the court would treat the objections of all subpoenaed deponents as
17  motions to quash, and would grant such motions, with the exception of Geiger's, for the
18  timeliness reasons set forth below.

19      II.  Plaintiffs' Requests for Order Shortening Time

20  As it was incumbent on plaintiffs to bring a motion to compel, their requests for
21  order shortening time in regard to the motions to compel compliance with subpoenas served on
22  Coon, Keen and Matsunaga are at issue.

23  \\\\\

24  _____

25      [6] Plaintiffs' motion pertaining to Geiger's subpoena will be addressed as their application
    for order shortening time was already granted and Geiger has filed a separate opposition to it,
26  rendering Geiger's motion to quash unnecessary.

5

1 Plaintiffs were permitted to argue at hearing the merits of their requests for order
2 shortening time, and even the merits of their substantive motions; however, their reasons for
3 bringing these motions on the eve of the extended discovery cut off date are not satisfactory.
4 Plaintiffs argue that the deponents have known of their impending depositions since at least May
5 16, 2008, when plaintiffs served defendants' attorneys with the subpoenas and notices of
6 deposition. Nevertheless, plaintiffs conceded at hearing that the parties had not started to
7 conduct deposition discovery until the last two or three months, but offered no good reason for
8 this delay. Giving plaintiffs every benefit of the doubt in regard to the earliest service date of the
9 subpoenas, and in light of the complexity of the subpoenas which require a great deal of
10 document investigation by attorney-witness deponents, they have provided an insufficient
11 showing for initiating this discovery at the eleventh hour, only six weeks before discovery cutoff
12 in a case that is a year and four months old.[7] Furthermore, plaintiffs did not bring their motion to
13 compel in regard to deponents Keen, Coon and Matsunaga until June 13, 2008, only little more
14 than two weeks before the discovery cutoff and six days before their proposed hearing date,
15 leaving no time for the court to issue a briefing schedule before the hearing. Plaintiffs' lack of
16 prior planning is not this court's emergency.

17 In contrast, the court has permitted the motion relating to Geiger's subpoena to go
18 forward because plaintiffs filed the application five days earlier than the other applications,
19 permitting time to address it and order a workable briefing schedule, within the parameters of the
20 scheduling order.[8]

---

[7] The undersigned is not setting forth an inflexible rule for deposition scheduling. In some cases for some deponents, notices of deposition could be sent out when they were. However, in situations where plaintiffs must have known that the deposition and document requests would engender vigorous and colorable objections, the timing was insufficient.

[8] The scheduling order provides:

> All discovery shall be completed by June 30, 2008. In
> this context, "completed" means that all discovery shall have been

6

Therefore, plaintiffs' outstanding applications for order shortening time for a motion to compel are denied without prejudice to their renewal should the district court extend discovery.

III. Geiger Subpoena

Geiger raises various substantive arguments in opposition to plaintiffs' motion, that the subpoena seeks protected documents, irrelevant information, that it imposes an undue burden, and that there is a presumptive protective order against oral depositions of opposing litigation counsel.

A. Depositions of Counsel

It should first be noted that Geiger is not opposing counsel in this case, but is litigation counsel for the District, and is opposing counsel to the Moris in two of their state court cases.[9]  His firm, Geiger, Coon, and Keen, are legal counsel for the District.  Geiger contends that not only is his testimony attorney-client privileged and protected as work product, plaintiffs cannot show his testimony is crucial because he was never deposed during the ten months that the TRO case was pending or the 24 months that the Ford case was pending.  Nor was he called as a witness during the eight days of the Ford trial.

Plaintiffs distinguish Geiger's cases as factually dissimilar because Geiger is not opposing counsel of record in this case, and he is an important percipient witnesses to non-privileged matters.  Therefore, plaintiffs argue his deposition is permissible.

Although the Federal Rules of Civil Procedure do not explicitly preclude the deposition of a party's attorney, the cases discourage it to the extent that such a discovery request

---

conducted so that all depositions have been taken and any disputes relative to discovery shall have been resolved by appropriate order if necessary and, where discovery has been ordered, the order has been complied with.

[9] Plaintiffs' counsel in this case did not represent plaintiffs in the state court cases.  See Matsunaga Mot. at 2-5.

7

often gives the opposing party good cause for a protective order. See, SEC v. Morelli, 143 F.R.D. 42 (S.D.N.Y. 1992); Buford v. Holloday, 133 F.R.D. 487 (S.D. Miss. 1990). West Peninsular Title Co. v. Palm Beach County, 132 F.R.D. 301 (S.D. Fla. 1990). The near presumption in favor of a protective order may be overcome where the attorney is a percipient witness to nonprivileged information. Schwarzer, et al., Federal Civil Procedure Before Trial, § 11:113.3 (1992).

The party seeking to depose the opposing party's counsel has the burden to show three elements:

> (1) [n]o other means exist to obtain the information than to depose opposing counsel [citation ommitted]; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986).

The Shelton criteria are not directly applicable as Geiger is not opposing counsel in this case; however, as discussed herein, all of the factors are satisfied in any event.

Plaintiffs have demonstrated that not only did defendants identify Geiger in their initial disclosures as having information concerning the matters at issue here, he "was the designated negotiator for Defendants to attempt to achieve an agreement that would have, any [sic] other things, permitted the levee expansion project on the Mori property." Larsen Decl., ¶¶ 8-11. Furthermore, plaintiffs show that he was the Secretary of the District during Phase I of the levee improvement project. They allege that he "expressly promised the District would not harm the trees while Plaintiffs were out of town." Id., ¶ 8.

Geiger should know that when he is *designated to testify in a case* by an entity he represents or by trustees connected with the entity, he represents facts which will revolve about, at least in part, his acts as an officer of the entity whose information is pertinent, his participation in litigation involving that entity, or its officers, is fraught with peril and, in fact, such a situation is simply unfair to the opposing side. If a litigant could protect all of its business actions under a

cloak of attorney-client privilege, no one but attorneys would be hired to conduct the business of the entity.

Federal law will govern the discovery issues in this case based at least in part on federal law. Federal law is uniform that unless the attorney is receiving or giving confidential *legal* advice, his or her participation on business will not be shielded from inquiry. Rehling v. City of Chicago, 207 F.3d 1009, 1019 (7th Cir. 2000). However, in situations where the attorney is retained to interface with one's legal adversaries, especially governmental adversaries, negotiations by the attorney concerning the reason for retention are not to be considered "business decisions" outside the possibility of attorney-client privilege. United States v. Chen, 99 F.3d 1495 (9th Cir. 1996). However, Chen does not aid Geiger herein in that Geiger was an officer of the involved entity, not just its lawyer, acting in a non-lawyer capacity (Secretary). Moreover, as emphasized above, he was designated to give testimony in this action. It is the height of legal chutzpah to be listed as a fact witness, but then refuse deposition because one is an attorney as well.

One of the best statements of the law, and one the undersigned finds persuasive for the federal rule as well, was set forth in 2,022 Ranch L.L.C. v. Superior Court, 113 Cal. App.4th 1377, 7 Cal. Rptr.3d 197 (2003).

> In certain instances it is difficult to determine if the attorney-client privilege (or work product privilege) attaches to a communication, particularly where there may be more than one purpose for that communication: " ' "Where it is clear that the communication has but a single purpose, there is little difficulty in concluding that the privilege should be applied or withheld accordingly. If it appears that the communication is to serve a dual purpose, one for transmittal to an attorney 'in the course of professional employment' and one not related to that purpose, the question presented to the trial court is as to which purpose predominates. ..." ' [Citation.]" (Travelers Ins. Companies v. Superior Court (1983) 143 Cal.App.3d 436, 452, 191 Cal.Rptr. 871, italics added.) This "dominant purpose" test not only looks to the dominant purpose for the communication, but also to the *1391 dominant purpose of the attorney's work. (Aetna Casualty & Surety Co. v. Superior Court (1984) 153 Cal.App.3d 467, 475, 200 Cal.Rptr. 471 (Aetna); Wellpoint, supra, 59 Cal.App.4th at pp. 121-122, 68 Cal.Rptr.2d 844.) Thus, "the attorney-client privilege [would] not apply without qualification where the attorney was merely acting as a negotiator for the client [citation], or merely gave business advice [citation], or was merely acting as a trustee for the client

1     [citation]." (Aetna, supra, 153 Cal.App.3d at p. 475, 200 Cal.Rptr. 471.)

2     For example, in Montebello Rose Co. v. Agricultural Labor Relations Bd. (1981) 119 Cal.App.3d 1, 173 Cal.Rptr. 856 (Montebello Rose), an attorney was hired by management to negotiate with a union. In an unfair labor practices proceeding before the Agricultural Labor Relations Board, the board reviewed, in camera, communications between the attorney and management. ( *Id*. at p. 31, 173 Cal.Rptr. 856.) Utilizing the dominant purpose test, the board concluded that those documents related to his role as labor negotiator were not privileged, separated them from documents related to legal advice, and allowed them into evidence. ( *Id.* at pp. 31-32, 173 Cal.Rptr. 856.) In doing so, the board noted that to give attorney-client protection to the attorney's negotiation communications "would unfairly reward those organizations able to hire attorneys as their negotiators because their communications concerning pending negotiations would be protected, whereas the communications of organizations with lay negotiators would not receive protection." ( *Id*. at p. 32, 173 Cal.Rptr. 856.) The Court of Appeal upheld the board's decision, reasoning that "[s]ince [management's] labor negotiations could have been conducted by a nonattorney, it is self-evident that communications with [the attorney] relating to the conduct of those negotiations were not privileged unless the dominant purpose of the particular communication was to secure or render legal service or advice." ( *Ibid.*)

    In Watt Industries, Inc. v. Superior Court (1981) 115 Cal.App.3d 802, 171 Cal.Rptr. 503 (Watt), the Court of Appeal held an attorney's notes were not protected by the attorney work product rule where counsel merely acted as business agent for his client. There, the attorney conveyed to plaintiff seller the clients' intention to reside in a condominium they were purchasing from plaintiff. At a deposition in an action filed by the seller the attorney refused to produce notes of that conversation with the seller. ( *Id.* at p. 804, 171 Cal.Rptr. 503.) The Court of Appeal directed the superior court to compel production. The court noted the work product rule applied to documents related to legal work performed for a client and not to notes memorializing acts performed as a mere agent. In doing so, the Court of Appeal noted that "[t]o apply the privilege in such a situation would have the effect of placing a premium upon use of attorneys as business agents, nonattorneys or clients acting for themselves having no such right to protect their notes." ( *Id.* at p. 805, 171 Cal.Rptr. 503.)

2,022 Ranch, 113 Cal. App. 4th at 1390-1391, 7 Cal. Rptr. 3d at 207-208.

    Of singular importance in this motion also is the fact that information ultimately transmitted to an attorney, if acquired for another dominant purpose, does not become imbued with the attorney-client privilege simply because it was also ultimately needed for litigation purposes.

> The landmark case of D.I. Chadbourne, Inc. v. Superior Court (1964) 60 Cal.2d 723, 36 Cal.Rptr. 468, 388 P.2d 700 (Chadbourne) details eleven basic principles to be applied in

10

> determining whether the attorney-client privilege exists in a corporate setting. (Id. at pp. 736-738, 36 Cal.Rptr. 468, 388 P.2d 700.) Where, as here, a corporate employer requires that its employees make a report, the privilege of that report is determined by the employer's purpose in requiring the report. (Id. at p. 737, 36 Cal.Rptr. 468, 388 P.2d 700.) When the corporate employer has more than one purpose in requiring the report, the dominant purpose will control. (Ibid.)

Scripps Health v. Superior Court,109 Cal. App. 4th 529, 533, 135 Cal. Rptr. 2d 126, 128 (2003). Unless it can be said that the dominant purpose of transmitting information to an attorney is the seeking of legal advice, the attorney-client privilege is non-existent. Id.

Analogous to this situation are the dual roles experts might play as consultants and later as testifying witnesses. The work product doctrine may protect communications only if there is a clear distinction between the two roles. Beverage Marketing Corp. v. Ogilvy & Mather Direct Response, Inc., 563 F. Supp. 1013, 1014 (S.D.N.Y. 1983). In Construction Industry Services Corp. v. Hanover Ins. Co., 206 F.R.D. 43 (E.D.N.Y. 2001), the court was unable to distinguish between an expert's role as a business consultant to the party on many aspects of the litigation and his role as testifying expert. The court found it significant that the expert had reviewed confidential information in both roles. "Nothing before the court demonstrated with clarity how Liebgold, in his capacity as a damages expert, could not have considered, on some level, his comprehensive knowledge of, and pre- and post-litigation exposure to, all confidential information regarding the lawsuit. Moreover, the fact that Liebgold acted as a consultant prior to being 'hired' as the damages expert cannot be the determining factor. If chronology was determinative, the opportunity for parties to shield disclosure of otherwise discoverable documents considered by their experts simply by hiring those individuals first as consultants and later as experts would be too great." Id. at 53. Consequently, the court found that the work product doctrine was waived. Further, if there is any ambiguity regarding the role played by the expert in reviewing or creating documents, whether as consultant or testifying, should be resolved in favor of the party seeking discovery. B.F.C. Oil Refining, Inc. v. Consolidated

1 Edison Co. Of N.Y., Inc., 171 F.R.D. 57, 62 (S.D.N.Y. 1997). This is especially true where an
2 expert has first reviewed documents as a consultant, and then becomes an expert. The roles are
3 blurred in this instance and the documents are discoverable. Id. at 61. Similarly, Geiger's dual
4 roles were certainly blurred as there was no legitimate way that Geiger could remove from his
5 analysis "secret" information received from, or given to the District.

6       For all of the above reasons, the undersigned grants plaintiff's motion to compel
7 the Geiger deposition. However, the deposition is not without limits, and because of the validity
8 of the attorney-client privilege to some aspects of Geiger's involvement with the District, the
9 deposition is limited to:

10       1. The facts directly pertinent to Geiger's designation of testimony;[10]

11       2. For other matters, those facts where the dominant purpose of Geiger's action or
12 acquisition of information, was not to impart or receive confidential attorney-client information.

13       B. Parameters of the Subpoena

14       Geiger also contends that the subpoena and deposition notice are overbroad in
15 seeking irrelevant information, impose an undue burden in requiring a massive production of
16 documents and privilege log,[11] and is abusive in being served at the end of discovery when
17 plaintiffs knew Geiger would be engaged in the Ford trial so that the request would distract and
18 divert him from the trial.

19       Geiger points to some of the requests which seek documents dating back 120
20 years to the formation of the District. For example, request number 14 seeks "any and all
21 documents in Deponent's possession, custody or control that refer to, relate to, or evidence
22 Reclamation District 348's authority to promulgate regulations." Larsen Decl., Ex. A. Plaintiffs

---

[10] It should go without saying that attorney-work product will not supply a reason for not answering questions due to Geiger's designation.

[11] To allay a portion of Geiger's concerns regarding 108,000 documents already produced through public records act litigation, plaintiffs state that they do not seek those documents already produced. Pls.' Reply at 2, n. 1.

also seek documents post-dating the events at issue which took place in February, 2005. Rather than requesting information concerning the only event taking place after February, 2005, the District's attempt to return the stored farm equipment in early Fall, 2007, plaintiffs seek seemingly irrelevant documents from after the event.

A review of the subpoena and notice of deposition reveals that many of the requests are overbroad, especially in light of the looming discovery cutoff and short notice. Nevertheless, some requests are very pertinent.

Plaintiffs' requests for documents are burdensome and, for the most part, will not be permitted at this late hour. Geiger will be required to produce only those documents that pertain to his express promises not to cut trees down while plaintiffs were on vacation as alleged in the complaint. Compl., ¶ 15.[12]

IV. Costs

Based on plaintiffs' lateness in seeking the instant discovery, and the fact that Geiger, et. al., were justified in opposing the motion, at least in part, plaintiffs' request for costs in bringing the instant motion is denied.

CONCLUSION

Good cause appearing therefor, IT IS ORDERED that:

1. Plaintiffs' ex parte applications for order shortening time and motion to compel compliance with subpoenas on Coon, Matsunaga and Keen, filed June 13, 2008, (docket #51), are denied.

2. The ex parte applications for order shortening time and motions to quash or for protective order, filed by Geiger, Coon, Keen and Matsunaga on June 13, 2008, (docket #s 45, 48, 49, 50, 55, 56, 57), are denied as unnecessary.

---

[12] As stated at hearing, much of the burden of document discovery is in the looking, not necessarily the production. Plaintiffs' offer that Geiger need not reproduce already produced documents ignores this reality.

1       3. This court's order to show cause why Geiger should not be held in contempt,
2 filed June 10, 2008, is discharged.
3       4.  Plaintiffs' motion to compel Geiger to comply with their subpoena, filed June
4 9, 2008, (docket #24), is granted in part as set forth in the text;
5       5. Plaintiffs' request for costs incurred in bringing the instant motion is denied.
6 DATED: 06/23/08

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U. S. MAGISTRATE JUDGE

GGH/076
Mori0295.R45.wpd